UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

M.C., individually and on behalf of W.C., a
child with a disability,

                              Plaintiff,

       -against-                                    1:10-CV-1068 (LEK/RFT)

LAKE GEORGE CENTRAL SCHOOL
DISTRICT,

                              Defendant.
─────────────────────────────────────────

## DECISION and ORDER

### I.    INTRODUCTION

Plaintiff M.C., individually and on behalf of W.C., a child with a disability ("Plaintiff"), commenced the instant action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 28 U.S.C. § 1400 *et seq.* and New York Education Law Article 89 seeking: (1) annulment of the decision of the State Review Officer and reinstatement of the relief granted by the Impartial Hearing Officer; and (2) attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3). Dkt. No. 1 ("Complaint"). Defendant Lake George Central School District ("Defendant LGSD") has asserted a counterclaim seeking reversal of that portion of the State Review Officer's decision that found that the District had not set forth an argument on appeal challenging the Impartial Hearing Officer's award of compensatory education. Dkt. No. 4 ("Counterclaim"). Presently before the Court are Defendant's Motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the claims against it and Plaintiff's Cross-Mmotion for summary judgment. Dkt. Nos. 13 ("Motion"), 14 ("Cross-Motion"). Defendant has also filed a Reply to the Cross-Motion. Dkt. No. 15 ("Reply").

### II.    COMPLIANCE WITH LOCAL RULES

Many of the facts considered by the Court are based on Defendant's Statement of Material Facts submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3). Dkt. No. 13-20. Although Plaintiff submitted a responsive Statement of Material Facts in the Cross-Motion, the Statement does not comply with the Local Rules. Dkt. No. 14-2. Local Rule 7.1(a)(3) requires that, in opposing a summary judgment motion, the "non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." The Rule provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. Plaintiff, who is represented by counsel, has failed to provide a response that mirrors Defendant's Statement of Material Facts and – in many instances – failed to provide citations to the record.[1] While the Court will – on this one occasion – overlook Plaintiff's failure to provide a response that mirrors the movant's Statement of Material Facts,[2] the Court deems Defendant's facts admitted where Plaintiff denies and/or objects to Defendant's facts without a supporting citation to the record.

### III. BACKGROUND

W.C. was born in 1990. Dkt. No 13-9 at 1. At all times relevant hereto, he was classified as a student with a learning disability. Cross-Mot. at 1 (citations omitted). On August 24, 2007, a Committee on Special Education ("CSE") was convened to develop an Individualized Education

---

[1] Plaintiff contends that "[a]s a practical matter, the parties need not be submitting statements of undisputed material facts in an IDEA administrative appeal, such as this case." The Court rejects this assertion. The Local Rules make no exception for administrative appeals pursuant to the IDEA.

[2] The Court expects full compliance with the Local Rules in all future cases.

2

Program ("IEP") for W.C. Dkt. No. 13-20 ¶ 20. It was determined at that time that W.C.'s special education services would be changed. Id. ¶ 15. The recommendations in the August 24, 2007 IEP were based, in part, on an evaluation completed by School Psychologist Stephen Clark on October 1, 2005. Id. ¶ 16. Clark testified that W.C. had significant deficits in all tested academic skill areas. Id. ¶ 17. Accordingly, the CSE recommended a special class with a 12:1+1 ratio;[3] speech and language therapy twice weekly; science and social studies every other day for 40 minutes; math daily for 40 minutes; English daily for 40 minutes; reading and writing support; testing accommodations; and program modifications, supplementary aids, and services. Id. ¶ 18. According to the LGSD, it could not provide education services in a less restrictive environment because W.C. required primary instruction in the areas of science, social studies, math ,and English that could not be provided through consultant teacher or resource room services. Id. ¶ 22; Dkt. No. 14-2 at 7. Nancy Damoretcki, CSE Chairperson, testified that direct reading instruction was not recommended because W.C. was in a 12:1+1 environment with intensive reading instruction that was conducted throughout the school day in and across all subjects. Dkt. No. 13-20 ¶ 24.

In the Fall of 2007, W.C.'s parents expressed concerns with W.C.'s educational program. It was agreed that W.C.'s program would be re-evaluated. Id. ¶ 60. In October 2007, W.C.'s parents unilaterally withdrew W.C. from the LGSD and enrolled him at the Waldorf School. Id. ¶ 62. A CSE meeting was held on November 16, 2007 at which time transition activities and goals were developed and incorporated into W.C.'s IEP. Id. ¶¶ 64, 67. The CSE recommended that W.C. continue placement in the 12:1+1 program, with related services of speech and language therapy and reading and writing support.

---

[3] This refers to a classroom with up to twelve students, one teacher, and one staff member.

The Saratoga Springs City School District ("SSCSD") developed an Individualized Education Services Program ("IESP") for W.C. for the remainder of the 2007-2008 school year while he was at the Walford School. Id. ¶ 84. This included a consultant teacher and speech/language therapy. Id. ¶ 85.

W.C.'s parents kept W.C. enrolled in the Waldorf School for the 2008-2009 school year. Id. ¶ 87. The SSCSD again developed an IESP for W.C. that included consultant teacher services. Id. ¶ 93. In May 2009, W.C.'s parents removed W.C. from the Walford School. They contacted the LGSD concerning services for W.C. to transition to college. Id. ¶ 146-47.

In October 2009, W.C.'s parents requested a due process hearing from the LGSD. Id. ¶ 1. After several days of hearings, in May 2010, the Impartial Hearing Officer issued a decision directing the LGSD to reimburse W.C.'s parents for all tuition and related expenses for W.C.'s placements at the Walford School for the 2007-2008 school year from November 16, 2007 and for the entire 2008-2009 school year. Dkt. No. 13-14. The LGSD was further directed to conduct a triennial evaluation of W.C. and to provide one on one reading instruction with a certified reading instructor from the Wilson program for two hours per day, five days per week from June 1, 2010 to September 1, 2010. See id. Defendant appealed this determination to the New York State Education Department's Office of State Review. Dkt. No. 13-20 ¶ 6. By decision dated June 28, 2010, the State Review Officer annulled those portions of the impartial hearing officer's decision that directed the LGSD to reimburse W.C.'s parents for tuition and related expenses. See id. ¶ 8; Dkt. No. 13-16. The State Review Officer further modified the impartial hearing officer's decision concerning the time period within which reading instruction was to be provided. Dkt. No. 13-16. The State Review Officer found that Defendant failed

4

to appeal the issue concerning compensatory education (i.e. providing one on one reading instruction). See generally id.

Plaintiff then commenced the instant action seeking: (1) annulment of the determination of the State Review Officer and reinstatement of the Impartial Hearing Officer's order; and (2) attorneys' fees and costs. Compl. Defendant filed a counterclaim seeking an order finding that it did properly appeal the compensatory education issue to the State Review Officer. Presently before the Court is Defendant's Motion for summary judgment and Plaintiff's Cross-Motion for summary judgment.

### IV.     LEGAL STANDARD

A motion for summary judgment is granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. Lipton, 71 F.3d at 469. The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set forth specific facts showing that there is a genuine issue for trial, and cannot rest on the mere allegations or denials contained in the pleadings. FED. R. CIV. P. 56; accord Sista, 445 F.3d at 169. That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. To defeat the motion, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome

5

a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). Only disputes over material facts – facts that might affect the outcome of the suit under the governing law – will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

V.     DISCUSSION

   A. Tuition Reimbursement

The IDEA was enacted to promote the education of children with disabilities. Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006). "A free appropriate public education must include special education and related services tailored to meet the unique needs of a particular child and be reasonably calculated to enable the child to receive educational benefits." Frank G., 459 F.3d at 363 (quoting Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998)) (internal quotation marks omitted). As the Second Circuit has explained:

> The key element of the IDEA is the development of an IEP for each handicapped child, which includes a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs. The IEP is collaboratively developed by the parents of the child, educators, and other specialists. New York has set forth regulations to implement the goals of the IDEA, which appear to track the IDEA closely. In developing a particular child's IEP, a Committee on Special Education is required to consider four factors: (1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs.
>
> If a state fails in its obligation to provide a free appropriate public education to a handicapped child, the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state. In determining whether parents are entitled to reimbursement, the Supreme Court has established a two pronged test: (1) was the IEP proposed by the school district inappropriate; (2) was the private placement appropriate to the child's needs. Moreover, because the authority to grant reimbursement is

> discretionary, equitable considerations relating to the reasonableness of the action taken by the parents are relevant in fashioning relief.

Frank G., 459 F.3d at 363-64 (internal quotations, citations, and alterations omitted).

The primary issue before the Court is whether Plaintiff is entitled to reimbursement for the tuition and related costs he incurred in sending W.C. to the Waldorf School. In seeking reimbursement, Plaintiff have the burden of demonstrating that the private school placement was appropriate.

> The same considerations and criteria that apply in determining whether the School District's placement is appropriate should be considered in determining the appropriateness of the parents' placement. Ultimately, the issue turns on whether a placement – public or private – is reasonably calculated to enable the child to receive educational benefits. While the IDEA does not require states to maximize the potential of handicapped children, it must provide such children with meaningful access to education. With these goals in mind, we have held that for an IEP to be reasonably calculated to enable a child to receive an educational benefit, it must be likely to produce progress, not regression. Courts must, therefore, examine the record for any objective evidence indicating whether the child was likely to make progress or regress under the proposed plan. . . .
>
> To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

Frank G., 459 F.3d at 364-65.

The Court will turn directly to the second inquiry – whether the Waldorf School was an appropriate placement for the 2007-2008 and 2008-2009 school years – because a determination of that issue is dispositive here. As noted, the ultimate inquiry is whether the parents' placement provides "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Id. at 465 (quoting

Rowley, 458 U.S. at 188-89).  For the following reasons, the Court finds that the Waldorf School did not provide an educational instruction program specially designed to meet W.C.'s unique needs.

The Waldorf School offers no special education services.  Similarly, it did not employ a special education teacher in W.C.'s class.  The class at Waldorf had between twelve to fourteen students, which was equivalent to the 12:1+1 classroom at the LGSD.  Thus, nothing about the services offered at Walford or the class sizes provided any particular benefit designed to meet W.C.'s needs.  The classroom consisted of one teacher, with no other staff in the classroom.[4]  The teacher at Waldorf testified that he did not discuss strategies for W.C. with the consultant teacher.  The Waldorf School did not modify the contents of its classes for W.C.; rather, the teacher modified his expectations with respect to W.C.'s performance and did not expect the same work product from W.C. as other students in the class.  To address W.C.'s difficulties, the teacher would repeat certain ideas, but did not specifically re-teach materials to W.C. any more than he assisted other students in the class.  This evidence further demonstrates that Waldorf did not implement a program specially designed to meet W.C.'s unique needs.

In core academic classes, W.C. struggled and was neither awarded full credit nor given a letter grade.  Rather, W.C. received an indicator on his transcript that he participated in the class.  A grade of full participation meant that the student was present in the class, had full attendance, put forth his best effort, and positively contributed to the classroom.  A grade of full participation did not indicate that W.C. was on track to earn credit for the class.  W.C. was unable to gain an understanding of several of his classes at Waldorf, learned only a few of the basic principles, was unable to grasp

---

[4] This was less than that at the LGSD, which had a teacher and a staff member in the classroom.

8

details, and had a limited understanding of the content presented. W.C. sometimes "disengaged" from the Waldorf classes and became lost. W.C. was placed in math courses for which he did not have the requisite background. W.C. also continued to struggle with his writing at the Waldorf School. Despite these continued problems, there is insufficient evidence in the record that the Waldorf School adapted its program to address W.C.'s specific and unique needs. There also is no indication of sufficient support services at the Waldorf School to attend to W.C.'s educational needs.

Objective test scores did not reveal any educational benefit from the Waldorf School. For example, a Woodcock-Johnson III test administered in December 2007 indicated that W.C.'s total reading level at that time was at a grade equivalent of 4.1. The same test was administered in April 2009 after W.C. had been at the Waldorf School for approximately one and one half years. The results of the 2009 test indicated basic reading skills to be a 3.9 grade equivalent. No documentation or other test results indicate any improvement or progress in the areas comprising the core deficits of W.C.'s learning disability between 2007 and 2009.

In sum, the Court agrees with the finding of the State Review Officer and concludes that there is insufficient evidence in the record to conclude that Waldorf provided educational instruction specifically designed to meet W.C.'s unique needs.[5] As the State Review Officer succinctly concluded:

> the student's English teacher modified his expectations of the student, rather than modifying his classroom material and assignments. . . . Furthermore, . . . the student's English teacher . . . did not modify the content of his classes based on conversations with the consultant teacher, and provided the student with the same support that he provided to other students in the general education program. . . . [T]o the extent that the student's special education needs were addressed during the 2007-08 school year, they were addressed by the student's consultant teacher that was provided pursuant to the . . . IESP and not by Waldorf.

---

[5] This is not to suggest that W.C. received no benefit whatsoever from the Waldorf School. As Plaintiff notes in his Memorandum of law, W.C. did achieve some benefits. That being said, the Waldorf School did not meet the standard required under the IDEA.

Dkt. No. 13-16 at 35. Because the private school placement was not appropriate, Plaintiff is not entitled to tuition reimbursement for W.C.'s education at the Waldorf School. Accordingly, there is no basis upon which to overturn the decision of the State Review Officer's decision in this regard.

### B. Compensatory Education

Defendant also seeks to reverse the determinations by the Independent Hearing Officer and the State Review Officer that Plaintiff was entitled to compensatory education. The State Review Officer found that the LGSD failed to present an argument on that issue in its appeal to the State Review Officer. Citing generally to its Exhibit I, Defendant contends that it raised this issue on appeal.

Although Defendants did appeal the issue concerning whether it provided a free, appropriate public education to W.C. for the 2009-2010 school year it did not specifically address the Independent Hearing Officer's conclusion that Plaintiffs were entitled to compensatory education as a result of any failures under the IDEA. While the issue of whether Defendant fulfilled its obligations under the IDEA is pertinent to an award of compensatory education, whether to award compensatory education as a result of the failure to comply with the IDEA is a distinct issue. See P. ex rel. Mr. and Mrs. P. v. Newington Bd. of Ed., 546 F.3d 111, 123 (2d Cir. 2008); Somoza v. New York City Dept. of Educ., 538 F.3d 106, 109 n.2 (2d Cir. 2008) ("An award of compensatory education is only appropriate for gross violations of the IDEA."); Wegner v. Canastota Cent. Sch. Dist., 979 F. Supp. 147, 151 (N.D.N.Y. 1997). Accordingly, this issue was not properly exhausted at the administrative level. Even assuming the matter was properly raised on appeal, as Plaintiff argues, the compensatory education services have already been provided and Defendant does not seek to recoup any costs associated with

the provision of such compensatory education services.[6]  See Counterclaim at ¶¶ 76, 77.  Accordingly, this issue is moot.

### C. Attorneys' Fees

Finally, Defendant seeks the dismissal of Plaintiff's claim for attorneys' fees.  In opposition, Plaintiff seeks leave to make a subsequent motion for attorneys' fees.

The IDEA authorizes the award of reasonable attorneys' fees to the parents of a disabled child who is the prevailing party.  20 U.S.C. § 1415(i)(3)(B).  "[T]o be a prevailing party, one must either secure a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree."  J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ., 278 F.3d 119, 123 (2d Cir. 2002).  Because the extent to which Plaintiff may be a prevailing party necessarily is affected by the Court's rulings on the instant summary judgment Motions, the Court finds that the parties should be afforded the opportunity to fully brief this issue with the benefit of having received the instant Decision & Order.  Accordingly, that portion of Defendants' Motion seeking to preclude an award of attorneys' fees is denied with leave to renew.

## VI.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 13) is **GRANTED in part** and **DENIED in part** in accordance with this Decision and Order.  Defendant's Motion is **GRANTED** insofar as that portion of Plaintiff's Complaint (Dkt. No. 1) seeking to annul the determination of the State Review Officer is **DENIED** and the First Cause of Action is, therefore,

---

[6] In fact, Defendants note that such services were provided in accordance with its obligations towards W.C. when he re-enrolled in the District.

**DISMISSED**.  Defendant's motion with respect to Plaintiff's request for attorney's fees (the Second Cause of Action ) is **DENIED with leave to renew**.  In all other respects, Defendant's motion is **DENIED**.  Plaintiff's Cross-Motion for summary judgment (Dkt. No. 14) is **DENIED in its entirety**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**IT IS SO ORDERED.**

DATED:     September 06, 2012
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge